Colcock, J.
delivered the opinion of the Court.
No rule is better established than thattheCourt will not disturb a verdict, when it is believed that injustice has not been done to the party applying for a new trial, and no rule of the law violated A brief review of the case will show that no injustice has been done to the defendants, and *253 they have not pretended that any rule of law has been violated. By their own showing it appears, that on the 8th March, 1808, they were indebted to the plaintiff the sum of $2112 54, which they had received over and above their demand^ from their agent at the Havannah, made from the sales of plaintiff’s property. Now admitting that, in the embarrassed situation of the plaintiff they had a right to pursue a double remedy, I ask, what should have heen their conduct on the 8th of March, when this balance came into their hands ? Were they not bound, by the principles of honour and honesty, as well as law, to have paid over to the plaintiff this sum ? If any additional inducement had been wanting, could it not have been found in the embarrassment of this unfortunate man; to whom such a sum may have been more, at that'time, than ten.times its amount at another ? There can be but one answer. Instead of pursuing such a course of conduct, they speculate on the paper of this unfortunate man, with his own money; buy up his notes for, perhaps, one third of their value, at all events at a considerable discount, and then say to him, “ That he Is entitled (or bound) to receive them at what they imported on the face of them, because it is self-evident that there could not exist a more legal, just, and honourable mode of payment, than that to a man in his own coin or debts; and that, if there was any thing to the contrary of these principles involved between the parties, it lay on *254 the side of the creditor refusing, and not on the side of the debtor, tendering to him his own just debts in payment.” It may he a just and' honourable mode of payment,, where a man comes justly and honourably into the possession of another’s papers; but this can hardly be said to have been done by the- defendants: where an agent buys up the paper of his principal with his own funds, he is not allowed to profit by it; and in this case the defendants, after having received the full amount of their demands, are to he considered as agents. It was in proof that the debts of the plaintiff to the Messrs. Deas were purchased by the defendants, in September, 1808, and these constituted nine-tenths of Ihe defendants’ discount. It is not extravagant to suppose that the other part was also purchased after that time, for before the information received from Cuba, there was no inducement for the defendants to get more of the plaintiff’s debts than they alreadypossessed. As agents then, they should-have credited the notes at the sums paid for them, and as they did not, the plaintiff was at liberty to 'show ichat that sum was; in this he was prevented by the presiding Judge, but the value of the notes may jjaye been fixed by the jury at one half. ' It has J v j been said the jury had no evidence on this point, . therefore, the verdict must bé set aside, but although they had no positive evidence, they ° ^ , ^ knew that the plaintiff had stopped payment, and they may have determined that, under such circumstances, his notes could not have been worth *255 more than one half. Juries frequently proceed, on such evidence, and if a verdict, given on such testimony, do not appear to be against the justice of the case, it will not, on that account, be set aside; nay, the rule has been carried much further than this: see 4th Term Rep. p.468. But, at all events, it shall not lie in the mouths of the defendants to say that the jury had erred in this respect, when they opposed the introduction of the testimony offered by plaintiff, to show at what price the notes were purchased. It is not necessary in such a case to say, on what particular ground the jury found for the plaintiff; it is'sufficient if there be an obvious ground supported bylaw and equity, on which the verdict may have been predicated. I shall not, therefore, take police of all the grounds of the plaintiff’s claim, hut rest satisfied with this, that as the notes were purchased with :his• money, he was entitled to the full benefit of the purchase, and, estimating the notes at little less than one-half, will give the verdict of the jury. It is not, perhaps, in this view of the case, necessary to say any thing on the point made by plaintiff’s counsel, relative to the effect of the insolvent debtor’s law on the case; hut I am of opinion that the discount cannot he considered as an action, and that the motion he refused.
where a jury elusions from facts and cire.utnparticularv 11 evidence on «.the yerdik ?heajus°t!ceaofathe case, it shall not poinf-was not gil-
It does not lie in the mouth of a party to object against the verdict, the want of testimony, on a point ,to which testimony was offered, and successfully opposed by that party at tne trial, but which ought to have been admitted.
Bay, Colcock¡ and Johnson, J. concurred.
Nott, J. gave no opinion.
Opinion of J udge cheves, contra,
Cheves, J.
delivered the following opinion.
In this case, the following facts are not contro - , verted:
plaintiff on the 18th December, 1807, wras L ■ indebted to the defendants on judgment 2375 dollars 34 cents, with interest thereon from the 12th of the same month, and 20 dollars 21 cents for cost of suit; and on a bill of exchange, including principal and damages, the sum of 780 dollars, making together 3175 dollars 55 cents. On the 22d January, 1808, he received from the Sheriff of Charleston District 1995 dollars 82 cents, leaving a balance due the defendants of 1179 dollars 73 cents. On the 28th January, 1808, the attachment of the defendants in theHavannahwas enforced by their agent, and he received 1542 dollars 25 cents, which was 362 dollars 42 cents more than the balance then due them. On the 10th February, 1808, their agent received 800 dollars 56 cents, and on the 8th March, 1808, 966 dollars 37 cents, which together exceeded the claim of the defendants 2029 dollars 35 cents.
It was proved, and not controverted, that the sum of 1542 dollars 25 cents was received by the defendants from Messrs. Ascamtti Son, of the Havannah, as the proceeds of 10 slaves deposited in their hands by Luther Cole, master of the sloop Deborah, from Africa, and sold by his order on account of the plaintiff and that on such sale the agent of defendants had purchased 9 of them’ which he had afterwards re-sold on account o *257 the defendants, to an advantage, viz. for the sum of 2390 dollars 18-f cents; but that an attachment had been legally and duly issued, and an arrangement made in consequence thereof, at the Court of the Consulado, under which the sale was .effected. That the agent of the defendants only took the said slaves to close the transaction ; that they were valued by their keeper, in the presence of one of the house óf Asea: atti 8f Son, fairly and justly; that no difference was made because the said agent was the purchaser; and that although he did afterwards re-sell the said slaves to an advantage, yet that such re-sale was on a credit, and attended with some risk, and that he did not recover the money until after some months’ delay, and much litigation! It was admitted by the plaintiff’s couusel at the trial, that the defendants’ agent was a man of unimpeachable character, and that it was not contended that any thing unfair had taken place in the sales of the said slaves. These admissions were reiterated by plaintiffV attorney, on record, on the hearing of this motion. It was also admitted at the trial, and on the hearing of this motion, that after the receipt of part of their debt from the Sheriff of Charleston District, the defendants had no means of countermanding their attachment so as to limit its operation to the precise sum due them. The account filed with the declaration, states the sums as before mentioned, and debits the defendants only with the sum of *258 1542 dollars 25 cents, on Account of 9 slaves pur_ 7 r chased of Ascaratti Sr Son. He swears, in an affi- . . . davit annexed to the original writ, to obtain bail o 1 to the balance due him, and only includes the sums as above stated. At the bottom of his account, he adds an item of the amount, of which he forms no estimate, for damages, because these negroes were improperly brought to sale. The defendants pleaded in discount several notes of the plaintiff’s — two payable to C. Sr T. Deas, for 692 dollars 58 cents, and 939 dollars 53 cents, which it was proved were endorsed to them in September, 1808; one to VerreeSr Blah-, for 129 dollars 50 cents, and one to .Alexander England, for 172 dollars, exclusive of interest. There was no proof when the two last came into their hands, nor was there any proof that any of them had been acquired for less than their nominal amount. Testimony which it was attempted to introduce to that effect, was rejected by the presiding Judge.
On the uncontroverted points of the ease, on the face of the plaintiff’s record, he is only entitled to recover about 137 dollars 21 cents. The verdict of the Jury was for 1186 dollars 91 cents. The controverted points of the case are, what sum shall be allowed for the negroes which were attached in the Havannah, and what sum shall be allowed in discount for the plaintiff’s notes ? On the part of the plaintiff, it is contended that the ultimate proceeds of the negroes which the de *259 fendants’ agent realized, shall be allowed to him, and that no more shall be discounted from his dema'd on account of his notes, than the defendants paid for them, assuming that the defendants paid less for them than their nominal amount.
If this verdict be sustainable, it must be on some of the following grounds:
1. That damages, eo nomine, can he recovered in this action, which is an action of assumpsit.
2. That the sale of the negroes by the plaintiff’s agent to the defendants, was a nullity, and that the re-sale shall be considered to have been on account of the plaintiff and for his benefit.
3. That it has been proved that the plaintiff purchased the notes pleaded in discount, for less than their nominal amount.
4. That, although purchased for less than their nominal amount, the defendants are not legally entitled to discount the full amount of them.
I lay out of view, as too clear to deserve consideration, the admissibility of the discount, which is clearly admissible, as well as the discharge of the plaintiff in the City Court as an insolvent debtor, which being several years subsequent to the filing of the discount, could not change the relation of the parties, or affect the fixed and vested rights of the defendants.
1. It would be trifling with the duties of the Bench to take any other notice of the first ground *260 than to state It for illustration, and to draw the argument to its real points.
2. The first sale of the negroes who were attached, was under the authority of the Court oí’ Consulado, and ought, from a respect for foreign tribunals, to be considered at least as prima facie evidence of the fairness of the transaction. But the character of this transaction does not depend on that alone; the sale was made by the plaintiff’s agents, who had his confidence, and who it is not pretended violated that confidence. It is proved to have been fair by an unimpeachable witness, and still inore, it is, in so many words, admitted by the plaintiff’s attorney to have been fair. At the trial, and before us, he has disavowed any intention to impeach the fairness of this sale. It is not, then, on the ground of unfairness In the sale that we can invalidate this contract.
But it is supposed the defendants may be considered as the agents of the plaintiff in the transaction. For what reason? Was there any express delegation of power to them? Was there any confidence reposed in them from which it may be implied ? Is it not repugnant to their avowed intentions ? Is it not repugnant to their indubitable rights ? At the moment of laying that attachment, after deducting the money received from the Sheriff, the plaintiff was indebted to the defendants Ü79 dollars 73 cents, besides some interest, making it upwards of 1200 dollars. The sum levied under the sale of these negroes *261 Was only 1542 dollars 25 cents. On what pretence, then, are the proceedings under the at-, tachment to he declared invalid, and the sale void ? The plaintiff himself never conceived the' idea, for he has, by his account and affidavit, affirmed this contract, which we have seen was fair, and which I think can hardly be denied to have been strictly legal after this view of the subject. The defendants did indeed receive 300 dollars and upwards, more than they were entitled to, and are accountable for that sum, together with those which they subsequently received. These sums were innocently received, and had they been paid over immediately to the plaintiff, I am not aware of any principle, legal or moral, which they would have violated ; and I am no less unaware of any legal principle, under the foregoing circumstances, (which utterly exclude the idea of an agency for the plaintiff on the part of the defendants,) by which the defendants can be made liable for a cent more than the sum for which their agent gave a receipt to the plaintiff’s agent.
3. I think it is true that the conduct of the defendants, on the receipt of the money from Havannah, in not paying over the balance, after deducting the sum due them, was exceptionable. For this they might have found some palliation in the fact that they, as his sureties, had been previously obliged to advance money for him, to lie out of it for some time, and, finally, to recover it *262 with great difficulty, and not' without hazard:. But I think think they cannot so easily excuse their conduct in collecting his floating paper into • their hands, to authorize them to withhold money which they ought promptly to have paid. If they purchased up his paper as alleged, it was much worse. It was a cruel speculation on his misfortunes, forbidden alike by justice and humanity. But as the case lies before us, what have we to do with these inquiries ? Can we say that they had legally no right to become the holders of the plaintiff’s notes,, or that they have no right to discount them in this action ? On neither point have we any doubt. The only question is, for what sum they shall be allowed to discount them. Under the present head we are only to inquire, what evidence there is, that these notes were obtained under their nominal amount? There is none. The presiding Judge refused to suffer any to be given. It is stated that the plaintiff had stopped payment, but it sometimes happens that men in the mercantile world stop payment when they are able to pay more than twenty shillings in the pound, and others stop fraudulently. Stopping payment can afford no proof of the fact in question. It is a precise fact, susceptible of precise proof. The error, in a legal point of view, will be quite as great if it be 100 dollars, as if it be 1000 dollars. There are some facts on which Juries and Courts of Justice are at liberty, from necessity, to draw *263 general presumptions, or there would be a failure of justice. There are others whose precision is never dispensed with, and of the latter character is the point in question. I think 1 hazard nothing - in saying that the fact of defendant stopping payment does not furnish the shadow of legal evidence, that the notes pleaded in discount were obtained by the defendants for one cent less than their nominal amount; and I therefore say there is no proof at all on the point. But if the jury made up their verdict on this point, which I do not believe, let us see what they have done. The principle, it seems to be admitted, and certainly it ought to he admitted, only applies to the notes obtained from C. and T. Deas, which together amount to 1632 dollars 11 cents; now the verdict exceeds by more than 1000 dollars the uncontroverted sum, and they must, therefore, under the state of the evidence just exhibited, haye made a deduction of upwards of 60 per cent.; that is to say, they must have determined that these notes were purchased for 40 dollars in the hundred, without one tittle of precise evidence on the point. Shall such a verdict be permitted to stand ?
4. Lastly, we are to inquire, whether, if the defendants did purchase these notes under their nominal amount, they are not legally entitled to recover the full amount of them? This is the only point in which I have had a doubt in the case. It would certainly be highly equi *264 table, (I do not speak of legal equity,) to reduce the claim of the defendants to the sum they actually paid for the notes, because they may be said to have paid for them with the plaintiff’s money ; and, as it regards ■ this case, I would very gladly so administer the law. But we ought to be very cautious that we do not allow hard cases to establish bad precedents, and to break down established rules, in the certainty and stability of which the great value of the law consists. It ought to be engraven on our minds that it is ever of more importance that the rules of law should be settled and established, than that they should be wisely pronounced. I am forbidden then to allow this reduction, unless I can find some precedent for it, or some analogous case, so strong as to make it almost identical in its principle, at least, with the one before us. But l can find none such. I know of no case, either at law, or in equity, in which the assignee or endorsee of another does not succeed to the entire rights of the assigner or endorser, except the case of trustees, where it is distinctly seen that the trust fund has been specifically and identically applied, or where their characters. are so completely those of mere depositaries, that they are not, and cannot, while they retain their proper character, become legal debtors to particular individuals for the funds in their hands, but hold them for legal distribution, as in the case of executors and administrators, who purchase up the *265 claims upon the estates they represent. The Courts of Equity, with a jurisdiction so appropriate to the subject matter, and with great comprehensiveness in their modes of relief, have gone no further; but, in this case, we must go much further in a Court of law," to do what is in this particular asked of us. I conclude, therefore, that were it fully proved that the defendants purchased these notes for fifty per cent, or less, they are, notwithstanding, entitled to discount the, full amount of them' in this action. I put this case : suppose the defendants' had paid the amount demanded or established by the plaintiff, and had brought their action on ’the notes, would not the payment have discharged them of the plaintiff’s demand, and would they not have been entitled to recover, in such action, the full amount of their notes ? I think there is no doubt on either point. But such a contrivance cannot vary the law, or it is soibetimes very vain in its pretensions to certainty. As to the rule that a verdict which is just shall be sustained, though it • be clearly against evidence, in hard actions} I do not think a case can be found -in the books, in. which it is applied to matters of account between merchant and merchant; but in the case before us, the questions are not questions of fact, but questions of law^ for there are no contested facts in the case, except on the purchase of the notes ; and on that, I" think, there is clearly no evidence. Now the' rule that vey-. *266 diets shall be sustained in hard actions, does not, , according to the best authorities, apply to any description of cases, where the question turns on a point of law. 4 Term Rep. 469. For these reasons I cannot concur with my brethren.
K. L. Simons, for the motion.
Fraser and Richardson, contra.
I am of opinion a new trial ought to be granted.